# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Julio Cesar Tapia, | CV 13-0059-TUC-RM (JR) |
| Petitioner, | |
| | **REPORT AND** |
| vs. | **RECOMMENDATION** |
| Charles L. Ryan, et al., | |
| Respondents. | |

Pending before the Court is Julio Cesar Tapia's Petition for Writ of Habeas Corpus (Doc. 1) filed pursuant to 28 U.S.C. § 2254. In accordance with the Rules of Practice of the United States District Court for the District of Arizona and 28 U.S.C. § 636(b)(1), this matter was referred to the Magistrate Judge for report and recommendation. As explained below, the Magistrate Judge recommends that the District Court, after an independent review of the record, dismiss the Petition with prejudice.

1

1

I.       **FACTUAL AND PROCEDURAL BACKGROUND**

2

After a jury trial, Tapia was found guilty of second-degree murder.  Ex. A, p.

3

1.[1]  The trial court sentenced him to a presumptive prison term of 16 years.  *Id*.  In its

4

Memorandum Decision affirming Tapia's convictions, the Arizona Court of Appeals

5

summarized the factual background as follows:[2]

6

> Tapia, his girlfriend H., and H's three children took two handguns into
> a desert wash area to practice target shooting.  Walking back through

7

> the wash, they found a tent surrounded by "junk" and began looking
> through the various items on the ground.  H picked up a lantern, and

8

> her oldest son picked up a golf club or bat.  The occupant of the
> campsite, J., a homeless man, arrived on his bicycle and yelled "[h]ey,

9

> that's my stuff."  J. continued to yell, grabbed at H's bag, and took the
> club or bat from her son.  Tapia, who at that time had an outstanding

10

> warrant for his arrest for a probation violation, shot J. three times with
> one of the guns he was carrying, hitting J. twice in the chest.  Tapia, H.

11

> and the children then quickly walked home.

12

> A few days later, J.'s body was found.  The police did not find a
> club or bat adjacent to J.'s body, but a golf club was found thirty or

13

> forty feet away.   The medical examiner later determined that either
> gunshot wound to the chest would have been fatal.   The police

14

> developed no immediate leads.  Approximately six months later,
> however, H. called the police to report a domestic violence incident

15

> involving Tapia.  At that time, she also told the police about J.'s
> shooting.  The police interviewed H. and her oldest son, and both said

16

> that J. did not have the club or bat when Tapia shot him.  H. said J. had
> tossed the club away and was leaving to call the police.  H. also told the

17

> police Tapia had threatened to kill her if she told anyone about the
> shooting.

18

_____

19

[1] Unless otherwise indicated, all exhibit references are to the exhibits attached to the
Respondents' Answer to Petition for Writ of Habeas Corpus (Doc. 9).

20

21

[2] The factual summary of the Arizona Court of Appeals is accorded a presumption of
correctness. 28 U.S.C. § 2254(e)(1); *Moses v. Payne*, 555 F.3d 742, 746 n. 1 (9th Cir.

22

2009) (citing *Hernandez v. Small*, 282 F.3d 1132, 1135 n. 1 (9th Cir. 2002)).

2

1

2          At a videotaped preliminary hearing, H. and her oldest son
   testified about the shooting.   H., who had since married Tapia,
   essentially recanted the original statement she had given to the police,
3  testifying that J. had been threatening her children with the club when
   Tapia shot him and that her oldest son, not J., had said he was going to
4  call the police.  She also testified Tapia had not threatened her after the
   shooting.   When confronted with her inconsistent statements, she
5  claimed she had lied because she was angry with Tapia at the time of
   her original statement.  H.'s son similarly changed his story, testifying
6  that J. had been threatening the family when Tapia shot him.

7          Because the state was unable to locate H. and her children at the
   time of trial, the videotape of their preliminary hearing testimony was
8  played for the jury.

9  Ex. A, pp. 2-3.

10         On appeal, Tapia's appointed appellate counsel raised the following claims:

11         1.     The trial court erred in denying Tapia's motions for a mistrial
   based on the prosecutor's pattern of misconduct in continually referring
12 to precluded and prejudicial information.

13         2.     There was insufficient evidence to convict Tapia of second-
   degree murder where the State's theory was that the alleged victim was
14 shot as he walked away and the unrefuted evidence shows that he was
   shot in the chest.
15
           3.     The trial court erred in denying Tapia's request to introduce
16 evidence that the alleged victim had been warned by police that he was
   trespassing at the incident location.
17
           4.     The trial court erred in denying Tapia's motion for a new trial.
18
           5.     The trial court erred in imposing a twenty dollar time payment
19 fee.

20 Ex. B (Appellant's Opening Brief), pp. 6-21.  By Memorandum Decision filed on

21 April 24, 2003, the Court of Appeals vacated the trial court's imposition of the $20

22 time-payment fee, but otherwise affirmed Tapia's conviction and sentence.  Ex. A.

3

1   Tapia then sought review of the decision by the Arizona Supreme Court, which

2   denied the petition on October 15, 2003.  Ex. C.

3          On December 19, 2003, Tapia initiated state post-conviction relief ("PCR")

4   proceedings by filing a PCR notice.  Ex. D.  In his subsequently filed memorandum,

5   filed with counsel, Tapia argued that:

6          1.      Defense counsel was ineffective for failing to fully explain the
               State's plea agreement terms in light of a trial's consequences.

7
8          2.      Defense counsel was ineffective for failing to object to the self-
               defense jury instructions.

9          3.      Defense counsel was ineffective for failing to request a proper
               "reckless" instruction that defined not a "reasonable person," but a
10             reasonable 16 year-old.

11  Ex. E.  The trial court denied each of Tapia's claims.  Ex. F.

12         Tapia filed a petition for review in the Arizona Court of Appeals, raising the

13  same claims that he raised in the trial court.  Ex. G (Petition for Review).  By

14  Memorandum Decision filed on September 15, 2006, the Court of Appeals granted

15  review, but denied relief.  Ex. H.  Tapia sought review of the Court of Appeals' order

16  by the Arizona Supreme Court, and by letter dated April 19, 2007, the petition was

17  denied.  Ex. I.

18         Over four years later, on November 4, 2011, Tapia filed a second PCR notice,

19  claiming that he possessed newly-discovered evidence which showed that he had

20  been sentenced by the Juvenile Parole Board for Second-Degree Murder as a juvenile

21  and, therefore, his indictment as an adult constituted double jeopardy.  Ex. J, p. 3.  He

22  also claimed that his counsel was ineffective for not raising the issue prior to trial.

4

1   *Id*.   The trial court denied the claims on procedural and substantive grounds and

2   summarily dismissed the petition.  Ex. K.  Tapia sought review by the Arizona Court

3   of Appeals.  Ex. L (Petition for Review).  The Court of Appeals granted review, but

4   denied relief.  Ex. M.  On October 4, 2012, the Arizona Supreme Court denied

5   Tapia's petition for discretionary review.  Ex. N.

6        In the petition now before the Court, Tapia raises five claims.  In Ground One,

7   he claims the Arizona Court of Appeals denied his right to appeal when it denied his

8   2012 petition for review of his second PCR petition.  In Ground Two, he alleges that

9   he was subjected to double jeopardy because he was prosecuted as a juvenile, was

10  charged with first-degree murder as an adult and, after those charges were dismissed

11  without prejudice, charged and convicted of second-degree murder.   In Ground

12  Three, he claims his lawyers were ineffective at trial, on direct appeal and during his

13  first PCR proceedings, and that he was denied the right to counsel in his second PCR

14  proceedings.  In Ground Four, he alleges that his right to due process was violated

15  because he is "actually innocent" of second-degree murder.  In Ground Five, which is

16  mislabeled as Ground Four in the Petition, he alleges that his speedy trial rights were.

17  *Petition*, pp. 6-10.

18  **II.   <u>TIMELINESS</u>**

19        The Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA")

20  provides for a one year statute of limitations to file a petition for writ of habeas

21  corpus.   28 U.S.C. § 2244(d)(1).   Petitions filed beyond the one-year limitations

22  period must be dismissed.  *Id.* The statute provides in pertinent part that:

5

(1) A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

Here, in Tapia's direct appeal proceedings, the Arizona Supreme Court denied review on October 14, 2003.  Ex. C. Tapia then had 90 days to petition the U.S. Supreme Court for review.  *See Bowen v. Roe*, 188 F.3d 1157, 1159 (9th Cir. 1999) (if a petitioner fails to seek a writ of certiorari from the United States Supreme Court, AEDPA's one-year limitations period begins to run on the date the 90-day filing period provided by Supreme Court Rule 13 expires).  Tapia did not seek United States Supreme Court review.  However, the limitations period was statutorily tolled when Tapia filed his first PCR notice on December 19, 2003.  Ex. E; *see* 28 U.S.C. §

1   2244(d)(2); Ariz.R.Crim.P. 32.2(a).   Tapia's properly filed PCR petition remained

2   pending until April 17, 2007, when the Arizona Supreme Court denied relief.  *See*

3   *Lawrence v. Florida*¸ 549 U.S. 327, 332 (2007).  Pursuant to 28 U.S.C. § 2244(d)(1),

4   Tapia then had one year, until April 16, 2008, to file his federal habeas corpus

5   petition.   By filing the instant petition on January 25, 2013, Tapia missed that

6   deadline by more than four years.  As such, unless he is entitled to substantial tolling,

7   the petition is untimely.

8   **A.    Statutory tolling is not available for Tapia's second PCR petition.**

9   As discussed above, the one-year AEDPA limitations period is tolled for the

10  "time during which a properly filed application for State post-conviction or other

11  collateral review with respect to the pertinent judgment or claim is pending."  *See* 28

12  U.S.C. § 2244(d)(2).   Under this provision, the period for Tapia to file his federal

13  petition was tolled during the pendency of his first PCR petition.   However, Tapia is

14  not entitled to statutory tolling during the pendency of his second PCR petition.   The

15  second petition, which was filed on November 4, 2011, had no tolling effect and did

16  not revive the expired limitations period.  *Ferguson v. Palmateer*, 321 F.3d 820, 823

17  (9th Cir. 2003) ("section 2244(d) does not permit the reinitiation of the limitations

18  period that has ended before the state petition was filed").

19  **B.    Tapia does not qualify for equitable tolling.**

20  The Supreme Court has concluded that equitable tolling is available to toll the

21  one-year statute of limitations applicable to 28 U.S.C. § 2254 habeas corpus cases.

22  *Holland v. Florida*, 560 U.S. 631, 644 (2010). A litigant seeking equitable tolling

7

1    bears the burden of establishing: "(1) that he has been pursuing his rights diligently,

2    and (2) that some extraordinary circumstance stood in his way," preventing him from

3    timely filing his petition. *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). "[T]he

4    threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the

5    exceptions swallow the rule." As the Ninth Circuit has explained:

6    
7    > To apply the doctrine in "extraordinary circumstances" necessarily
>    suggests the doctrine's rarity, and the requirement that extraordinary
>    circumstances "stood in his way" suggests that an external force must
8    > cause the untimeliness, rather than, as we have said, merely "oversight,
>    miscalculation or negligence on [the petitioner's] part, all of which
9    > would preclude the application of equitable tolling.

10   *Waldron–Ramsey v. Pacholke*, 556 F.3d 1008, 1011 (9th Cir. 2009) (internal citation

11   omitted); *see also Stillman v. LaMarque*, 319 F.3d 1199, 1203 (9th Cir. 2003)

12   (petitioner must show that the external force caused the untimeliness).

13           In his Reply, Tapia offers several circumstances which he contends support

14   the application of equitable tolling. He asserts that he "was a 16 year old boy when

15   convicted of second-degree homicide by a jury," is functionally illiterate, and did not

16   have access to a paralegal or legal reference materials. He also contends that he is

17   actually innocent. *Reply*, pp. 1-4.

18           As it relates to equitable tolling, Tapia's actual innocence claim is addressed

19   separately below. As for his lack of legal sophistication, resources and literacy, those

20   considerations, at least insofar as they are alleged by Tapia, do not support equitable

21   tolling. As a threshold matter, Tapia's allegations as to his sophistication and literacy

22   are conclusory and vague. *See Lott v. Mueller*, 304 F.3d 918, 923 (9th Cir. 2002)

8

1  (noting that equitable tolling evaluations "turn[] on an examination of detailed

2  facts").  Tapia has provided no information about his education.  Additionally, even

3  if he had, a *pro se* petitioner's lack of legal sophistication or illiteracy alone is not an

4  extraordinary circumstance to justify equitable tolling.  *See Stancle v. Clay*, 692 F.3d

5  948, 952, 959 (9th Cir. 2012); *Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir.

6  2006); *Baker v. Cal. Dep't of Corr.*, 484 Fed.Appx. 130, 131 (9th Cir. 2012); *Chaffer*

7  *v. Prosper*, 592 F.3d 1046, 1049 (9th Cir. 2010) (*pro se* status, missing law books,

8  and reliance on helper who transferred were not extraordinary circumstances);

9  *Hughes v. Idaho State Board of Corrections*, 800 F.2d 905, 909 (9th Cir. 1986) (pre-

10  AEDPA decision that *pro se* prisoner's illiteracy and lack of knowledge of law

11  unfortunate, but not sufficient to establish cause);  *Turner v. Johnson*, 177 F.3d 390,

12  392 (5th Cir. 1999) (unfamiliarity with the law due to illiteracy is not sufficient).

13  Tapia's claim that he was "a 16 year-old boy when convicted" warrants

14  special attention.  As the foregoing authorities establish, bald assertions of a lack of

15  legal sophistication do not support tolling.  However, some courts have recognized

16  that a petitioner's status as a minor might support tolling until the petitioner has

17  reached adulthood, "with perhaps a one-year grace period thereafter."  *See Hamilton*

18  *v. Gonzalez*, 2009 WL 3517612, *4 (N.D. Cal. 2009).  As such, Tapia's age might

19  appropriately be taken into consideration if his claim that he was 16 years-old when

20  convicted was in fact true.  However, the record reflects that Tapia was 16 years-old

21  when he murdered his victim in the Spring of 1998.  *Petition*, p. 14; Ex. B, p. 1; Ex.

22  E, p. 2.  However, he was not convicted of the crime until three years later in 2001.

1    *Petition*, p. 15; Ex. H, p. 1.  By that time, Tapia had reached the age of majority and

2    has been an adult throughout his period of incarceration for the second-degree

3    murder.  He was not a "16 year old boy" when convicted and he cannot use his age to

4    excuse his failure to timely pursue his federal habeas petition.

5            As the foregoing discussion establishes, the burden to establish tolling is

6    onerous and requires a petitioner establish that it was *impossible* for him to timely

7    file his petition.  *See Brambles v. Duncan*, 412 F.3d 1066, (9th Cir. 2005).  Tapia does

8    not explain what changed in his circumstances that enabled him to file his second

9    PCR petition and the instant habeas petition more than four years after his first PCR

10   petition was denied.  He has not carried his burden to establish that he has been

11   pursuing his rights diligently and that some extraordinary circumstance stood in his

12   way and prevented him from timely filing his petition. *Pace*, 544 U.S. at 418.  Thus,

13   equitable tolling is not available.

14           Tapia also claims that he is actually innocent of the crimes for which he was

15   convicted, and argues that it would be a fundamental miscarriage of justice for the

16   court to dismiss the petition as barred by the statute of limitations. *Reply*, pp. 3-4.

17   The U.S. Supreme Court has agreed with the Ninth Circuit that the "actual

18   innocence" exception applies to the AEDPA's statute of limitations.  *See McQuiggin*

19   *v. Perkins*, -- U.S. --, 133 S.Ct. 1924, 1928 (2013); *Lee v. Lampert*, 653 F.3d 929,

20   934 (9th Cir. 2011) (en banc).  In *Lee*, the Ninth Circuit held that a credible claim of

21   actual innocence under *Schlup v. Delo*, 513 U.S. 298 (1995), excuses a petitioner's

22   failure to bring his claims within AEDPA's limitations period.  *Lee*, 653 F.3d at 932,

1    *citing Schlup*, 513 U.S. 298.   Under *Schlup*, a petitioner must produce sufficient

2    proof of his actual innocence to bring him "within the 'narrow class of cases . . .

3    implicating a fundamental miscarriage of justice.'" 513 U.S. at 314–15 (quoting

4    *McCleskey v. Zant*, 499 U.S. 467 (1991)). To pass through the Schlup gateway, a

5    "petitioner must show that it is more likely than not that no reasonable juror would

6    have convicted him in light of the new evidence . . . ." *Schlup*, 513 U.S. at 327. The

7    evidence of innocence must be "so strong that a court cannot have confidence in the

8    outcome of the trial unless the court is also satisfied that the trial was free of

9    nonharmless constitutional error." *Id*. at 316.

10       Actual innocence in this context "means factual innocence, not mere legal

11   insufficiency." *Bousley v. United States*, 523 U.S. 614, 623–24, 118 S.Ct. 1604, 140

12   L.Ed.2d 828 (1998); *Jaramillo v. Stewart*, 340 F.3d 877, 882–83 (9th Cir. 2003)

13   (accord).   As noted by the Ninth Circuit in *Lee*, to make a credible claim of actual

14   innocence, a petitioner must produce "new reliable evidence-- whether it be

15   exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical

16   evidence-- that was not presented at trial." *Lee*, 653 F.3d at 937 (quoting *Schlup*, 513

17   U.S. at 324). The habeas court then considers all the evidence, old and new,

18   incriminating and exculpatory, admissible at trial or not. *House v. Bell*, 547 U.S.

19   518, 538 (2006).   Based on the complete record, the court makes a "'probabilistic

20   determination about what reasonable, properly instructed jurors would do.'" *Id*.

21   (quoting *Schlup*, 513 U.S. at 329).   "The court's function is not to make an

22   independent factual determination about what likely occurred, but rather to assess the

11

1   likely impact of the evidence on reasonable jurors. *Id* . (citing *Schlup*, 513 U.S. at

2   329.)

3          Tapia argues that he is actually innocent of second-degree murder because he

4   was acting "in defense of his family, life, and the threat of serious irreparable injuries

5   to himself, his family, and children." *Petition*, p. 9.  This evidence is neither new nor

6   reliable.  This was the same defense theory presented to and rejected by the jury at

7   trial.  Ex. A, p. 9 (Arizona Court of Appeals noting that Tapia claimed he shot his

8   victim because he "was approaching him, swinging a club, and threatening his

9   family.").   Moreover, as noted by the Court of Appeals, this evidence was

10  substantially undercut by the statements Tapia's girlfriend and her son provided to

11  police after the shooting.   Although they later changed their stories and were

12  unavailable at trial, during the investigation, both the girlfriend and the son said that

13  the victim "did not have the club or bat when Tapia shot him," and "had tossed the

14  club away and was leaving to call the police." Ex. A., p. 2.[3]  Tapia's girlfriend also

15  told police that Tapia had threatened to kill her if she told anyone about the shooting.

16  *Id*.  In light of this evidence, Tapia's renewed claim of self-defense and defense of

17  others would have same impact as it did previously--  reasonable, properly instructed

18  jurors would convict him.  Accordingly, Tapia has not satisfied the requirements of

19

20  _____

21  [3]  At a later hearing, the girlfriend, who had since married Tapia, recanted the
    statement and testified that Tapia's victim had been threatening her children with a
22  club when Tapia shot him. Ex. A, pp. 2-3.

1  *Schlup* and cannot pass through the actual innocence gateway around the AEDPA's

2  statute of limitations.  The petition is untimely.

3  In his Reply, Tapia appears to attempt to avoid this result by relying on

4  *Martinez v. Ryan*, -- U.S. --, 132 S.Ct. 1309 (2012).  However, *Martinez* does not

5  provide a basis for equitable tolling of the AEDPA statute of limitations.  Rather, it

6  offers a potential basis to excuse procedural default and failure to exhaust in state

7  court.  132 S.Ct. at 1315.  The decision has no application to the timeliness of a

8  petition under AEDPA one-year filing requirement.  *See Tucker v. Ryan*, 2014 WL

9  1329293, at *4-5 (D. Ariz. Apr. 1, 2014); *McKinnie v. Long*, 2013 WL 1890618, at

10  *7-8 (C.D. Cal. Apr. 5, 2013).

11  **III.    RECOMMENDATION**

12  Based on the foregoing, the Magistrate Judge **RECOMMENDS** that the

13  District Court, after its independent review, **deny** Tapia's Petition for Writ of Habeas

14  Corpus (Doc. 1).

15  This Recommendation is not an order that is immediately appealable to the

16  Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1),

17  Federal Rules of Appellate Procedure, should not be filed until entry of the District

18  Court's judgment.

19  However, the parties shall have fourteen (14) days from the date of service of

20  a copy of this recommendation within which to file specific written objections with

21  the District Court.  *See* 28 U.S.C. § 636(b)(1) and Rules 72(b), 6(a) and 6(e) of the

22  Federal Rules of Civil Procedure.  Thereafter, the parties have fourteen (14) days

13

1   within which to file a response to the objections.  Replies shall not be filed without

2   first obtaining leave to do so from the District Court.  If any objections are filed, this

3   action should be designated case number: **CV 13-0059-TUC-RM**.  Failure to timely

4   file objections to any factual or legal determination of the Magistrate Judge may be

5   considered a waiver of a party's right to *de novo* consideration of the issues.  *See*

6   *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir.2003)(*en banc*).

7          Dated this 24th day of November, 2014.

8

9

10                              Jacqueline M. Rateau
                                United States Magistrate Judge

11

12

13

14

15

16

17

18

19

20

21

22